May it please the Court, my name is Charles Morse, and I am appointed counsel to represent the appellant, in this case Rex Chappell, and I intend to reserve two minutes of rebuttal time. Could you speak up a little bit? Oh, yes. Thank you. This appeal concerns an effort by four defendants to prevent my client, prisoner Rex Chappell, from pursuing an appeal of a questionable civil rights judgment against him. As a result of this, and a course of misconduct leading up to it, Mr. Chappell alleges that he was denied his right of access to courts and that he was retaliated against for the exercise of his First Amendment rights. Three arguments have been offered against Mr. Chappell's position, two by the district court, one more recently by the defendants. None of these three succeed. The first argument has to do with whether, with respect to the access to courts claim, the confiscation of Mr. Chappell's opening appellate brief and its attachments caused the dismissal of his appeal. Now, the Court said that the cause was a failure to pay the filing fee. How do you respond to that? That's correct, Judge Fletcher. That's clear from the Ninth Circuit docket. But in a Section 1983 action such as this one, the governing concept of causation is the common law notion of proximate cause. And proximate cause exists, or misconduct, an item of misconduct, an act of misconduct proximately causes an injury if the injury is the natural or reasonably foreseeable consequence of the misconduct. And this Court has held that one form causation can take is the setting into motion of a series of acts by others that lead in a reasonably foreseeable fashion to the constitutional injury. And that is precisely what happened in this case. With the confiscation of Mr. Chappell's opening appellate brief and its attachments, he alleges quite clearly that he was left unable to prosecute the appeal any further. Well, why was that? Why couldn't he simply have asked for an extension of time explaining that he needed to redo his work? Well, he alleges, and it disappears on page 25 of the Defendant's Excerpt of Record, that the attachments to his brief were critical and that without them he was simply unable to proceed further. In other words, there were original documents in support of his brief, or is it not that specific? It's not that specific. I think all the same, the allegation is sufficiently clear, and certainly for purposes of notice pleading under Rule 8. Sorry, I can't hear. No, for purposes of notice pleading under Rule 8, I think the allegation is sufficient. So the position he found himself in is that he was unable to prosecute the appeal further. This was in January 2001. Subsequent to that, in February 2001, this court entered an order denying him informer paupers status and ordering that he pay a $105 filing fee, which he declined to do. And under the circumstances, that's quite understandable. He's a man of limited means. He had no way of pursuing the appeal. What he was being asked to do was to pay $105 for the purpose of seeing his appeal then dismissed for failure to prosecute. There was simply no reason he would do this. And that this should come to pass was reasonably foreseeable. At the time the Defendant seized the opening brief and its attachments, it was not at all unreasonable to suppose that if he were called upon to pay a fee or to take some further act to prosecute the appeal, he would be unable to do so. The other point, I guess, that was particularly made was that he would have to show in this action that his he would succeed in his underlying case. Again, Judge Fletcher, that is right. Since the Lewis v. Casey decision of the Supreme Court in 1996, it has been necessary to show that your underlying appeal that was lost by reason of defendant's misconduct would have been non-frivolous. But the pleading standards for this are rather light. It's notice pleading under Rule 8a. And the Supreme Court elaborated upon this in 2002 in the case of Christopher v. Harbury and indicated that the touchstone of the analysis was whether fair notice was given to the defendants. In this case, I don't think there can be any doubt that the defendants had fair notice of the underlying claims. As a matter of fact, the defendants attached to their declaration in support of the motion to dismiss the magistrate judge's report and recommendations in Chappelle v. Rios, which is the appeal that was dismissed. Not only that, the same counsel from the California AG's office represented defendants in Rios and in the instant case. So fair notice was not an issue. And what is more, in a very recent case out of the Seventh Circuit, a case called Thompson v. Washington, Judge Posner had occasion to consider pleading standards for this precise sort of claim, a claim that confiscation of briefs led to the loss of an appeal. In that case, the plaintiff had not even named the actions. There were a series of actions that he said were terminated by reason of confiscation of his briefs by prison officials. And Judge Posner said it is enough to name the cause of action to say that you were denied access to the courts and to give some indication of time and place, which Judge Posner said was amply supplied in that instance, even though the particular actions that were lost were not named. In this case, Mr. Chappelle went well beyond that. He named the appeal that he says was lost by reason of the misconduct, and he provided the docket number. And as I said, the defendants went so far as to dig up the magistrate judge's reasons and attach them, making them part of the motion to dismiss record, making them something that ought to have been considered by the district court. But by just by asking him for the $35 filing fee, I believe under the informer porpoise regulations, there was that would have been based on some judgment that the case didn't have a fair chance of success to begin with. Isn't that right? Well, you know, that may be the case that that is one of the criteria that's taken into account. But in this instance, if you read the 15-page report and recommendation of the magistrate judge, with all due respect to that magistrate, there are some grounds for appeal that I think are fairly evident on the face of it. That case, Chappelle v. Rios, had to do with the opening of Mr. Chappelle's confidential legal mail from a San Francisco law firm. And the magistrate said that while this was deplorable conduct, it was not actionable because in the Ninth Circuit, an isolated incident of opening prisoner mail does not rise to the level of constitutional injury and cited a case called Stevenson v. Kosky. But Stevenson does not stand for that proposition. Stevenson had to do with the parole officers handing over of legal mail to a prison guard who then opened it. And the case took it for granted without deciding that the prison guard's conduct in opening the one item of mail would have been actionable as a constitutional harm. The question was whether the third party's handing over of the documents made him complicit in it. So to the extent Stevenson was at all relevant in Chappelle v. Rios, it actually supported his claim, contrary to what the magistrate concluded. And the other error was that the magistrate imposed a heightened pleading standard. And since 1998 in Crawford, L.V., Britain, that has not been a viable state of affairs under Section 1983. And this Court in 2002 in Galbraith v. County of Santa Clara made it clear that there are no heightened pleading standards for Section 1983 actions. So there are two grounds for appeal that are not particularly elliptical or abstruse. They appear, I think, to a knowledgeable lawyer on the face of the opinion, which was, as I say, part of the motion to dismiss the record. The one other ground that was put forward in this case for dismissing the First Amendment retaliation claim was that Mr. Chappelle had not adequately alleged a chilling effect. And since this Court's amended decision in Rodes v. Robinson, it's been clear that that is an element. But also that there's no talismanic quality to the word chilling effect. They don't have to appear in the complaint. Kagan. One question is the chilling effect is necessary when the retaliation is not about the First – is not itself an interference with First Amendment activity. But my understanding here is that what was the retaliation was refusal to Xerox's legal material. Is that right? Well, the allegations are that the retaliation was for his persistent complaining. But what was the retaliatory act? What was done in retaliation? It was – there were a number of retaliatory acts. He alleges a three-and-a-half-year course of attempting to abridge his photocopying privileges. Right. And then that led up to the 2001 seizure and ultimate loss of his appellate brief. So he also alleges that he was placed briefly in administrative segregation. But it was – But wasn't the place in administrative segregation for his reaction to the activity rather than the activity? With respect to the administrative segregation point, it's unclear from the pleading. It's a pro se complaint. And while I think it amply makes it a cause of action, it is not a model of draftsmanship. It's hard to say precisely at the motion-to-dismiss stage what – what it is that caused him to be placed into administrative segregation. Okay. Thank you. Your time is up. I appreciate the argument. Sir. Good morning. My name is John Riches. I'm Deputy Attorney General from Sacramento. I represent the defendants and appellees in this matter. We're asking the Court to affirm the district court's dismissal here, which was a dismissal without leave to amend on the basis that Chappelle could make no showing that he is entitled to relief, and these deficiencies cannot be cured by amendment. On the access to courts claim here, as Judge Fletcher has already indicated, the access to courts, the Rios appeal, was dismissed not because of defendant's conduct, but because Mr. Chappelle was ordered to pay the filing fee and he failed to do so. Well, if your papers had been confiscated so you couldn't file your papers, wouldn't a reasonably prudent individual say, well, I'm – why should I pay the filing fee? In this – excuse me – in addressing that particular point, I would direct the Court's attention to the fact that Mr. Chappelle was ordered to pay the filing fee or to show cause why he – or to apply for IFP status or show cause why it shouldn't be dismissed in December. January 2nd is when he alleges his brief was confiscated. After that fact, he brought a motion for an additional extension of time in the Rios appeal based upon the difficulty in photocopying without any apparent mention that his brief had been confiscated. Does the government at this point challenge that it was confiscated? I think the record shows that the defendants claimed, and it's in the attachments to – the exhibits attached to the complaint, that they returned these documents to him the same day that they took them to review. But the question here is whether or not that is evidence that can be considered by this Court given the procedural status of this appeal. Right.   And if that's the case, then, were this matter to be remanded and we go to summary judgment, yes, that would be our claim, that the documents were returned. But you really can't make that assertion at this point. No, we cannot. Okay. Not at this point. But as to the motion that you just mentioned, which I was not aware of before, I'm not sure what that demonstrates. Again, he may have been trying to get his material – let's assume everything he said is true, as opposed to not true. He could have thought, well, I'll get an extension and I'll try and get the money back, the material back, and then if I can go forward, then I can pay my fee. But what's the point of paying the fee if I'm not going to be able to go forward? Well, if I may, as in the Rhodes case, make a literary allusion, I think this case is about the dog that did not bark. It's what he does not say that is more important than what he does say. Here, on – in the January motion for extension of time, the January declaration, he does not mention the confiscation of the dog. Right. But that's obviously in support of your ultimate position that this didn't happen. Exactly. But leaving that aside for now, because as we've just established, that's not where we are. Why does the failure to pay the fee get the case over? Because that was the reason that it was dismissed, not because of defendant's conduct. The Court had every opportunity – in fact, the Court did extend his time and gave him until April 9th to file his brief conditioned upon the payment of fees. And contrary to what counsel was saying, at this particular point, Mr. Chappell was not a person of limited means. The Rios case had to do with the fact that he wanted to establish a savings account for about $16,000 in proceeds from a previous litigation, successful litigation that he had undertaken up at Pelican Bay. Is that, by the way, why he was denied informal corporate? Do we know that? That would be my understanding, yes. So there wasn't a potential frivolousness determination necessarily? Not that I'm aware of. I see. Okay. Go ahead. I'd like to address for a few moments the issue of retaliation. Here again, I think there are two bases upon which the district court's dismissal, again without leave to amend, can be affirmed. The first is there's – there is no showing of retaliatory intent. That was addressed in the previous questions. And secondly, there is no showing of a chilling effect. In Rhoades, the Rhoades characterization of the elements of a retaliation claim, the second element they use is that the – they say the adverse – there is no showing of retaliation because of the action of the defendant. There are no allegations here linking the retaliatory – the alleged retaliatory activity with the protected activity. He doesn't say that my – I wasn't given my photocopies because I brought all of these lawsuits. There is no allocation of retaliatory intent. And secondly, the record clearly shows that there is no retaliatory intent. Here, as we've identified in the record, during the period in which he was supposedly being retaliated against, he accessed the Federal district court six times, he accessed the Ninth Circuit Court of Appeals four times. If, as counsel has argued, the retaliatory action was interfering with his photocopying of his materials so he could not access the courts, how is it that he was able to access the courts, these courts, the Federal courts alone, ten times over this three-and-a-half-year period? I think that it's clear that there was no retaliatory intent. All of them. Kagan. You're really saying, again, that this didn't happen, right? You're essentially saying he did not, in fact – there was not, in fact, a denial of the right to make copies, because how did he get this stuff into court? What I'm saying is that the – there are five elements, according to Rose, to a retaliation action. One of them is there must be a motivation. The burden of proof is on the plaintiff to show that the retaliatory action was – or that his protected activity was a substantial and motivating factor behind retaliatory conduct. I know. But what I'm trying to understand is why you say, well, he did get into court many times. I don't know what that shows about anybody's intent. It may show that this just didn't happen. But why does it show anything about anybody's intent? He claimed that for three-and-a-half years, these defendants kept retaliating against him. Right. And you're saying they didn't because the stuff got filed. Exactly. And his claim is their retaliatory conduct was interfering with the implementation of the photocopy policy and interfering with his copies. Well, how could that be so if he's getting to court all the time? You know, this is the kind of case where I think we would all wish that the judge would proceed to summary judgment where we'd have a full understanding of really what's going on. I can understand that. And really – and even from your point of view, it's always – it sounds like you have a really good defense, and that would be the end of it. And instead, we're dealing at the pleading stage, which makes it very difficult. I do have another question relating to retaliation. Assuming, again, that what he says happened happened, the – does the chilling effect – this is basically what I said before. It seems to me the chilling effect requirement is dealing with situations in which somebody does a First Amendment activity and then somebody does sort of a non-First Amendment thing to them, and the question is, is that going to chill their First Amendment activity? But here, what he's claiming was done to him is essentially more interference with his First Amendment rights. That's what he's claiming. And if that's the case, what's the point of a chilling effect requirement? In other words, he's claiming the retaliation was itself a First Amendment interference. I think the answer to that is that the whole reason that there is a retaliation cause of action is because the retaliatory conduct may tend to chill the exercise of constitutional rights. That's the whole basic underpinning of it that – from the Supreme Court case in 1972. I think that's why we have a retaliation jurisprudence. But this is an easy case, it's not a hard – if it's true. I mean, one doesn't have to get to the harder questions, it seems to me, about whether there's going to be an indirect effect in First Amendment rights, because there's a direct effect if he's right. I'm not quite sure if I understand your question, but to me, it always seems that we're dealing in a prison context. And in a prison context, the fear is that if you allow a lowered standard for retaliation claims, you're going to get a flood of claims. The enterprising inmate is going to come in and say that everything – you know, he's going to file a grievance, I'm filing a grievance, then everything after that becomes retaliatory. And the Court's – This would be a heightened standard, not a lower standard, because it would be a standard saying that whether retaliation itself is First Amendment interference, rather than having to prove something more indirect. Right. And the difficulty we have with that at this point is the procedural aspect of the case. It's what, I'm sorry? It's the procedural aspect of the case. We're here on a dismissal instead of a motion for summary judgment. Well, thank you so much for your argument. Thank you. We'll give you a minute. Go ahead. I have just a couple of points to make. First, with respect to the dog that did not bark, the dog didn't bark right away, but the dog started barking with the filing of the complaint. And I think that's more than adequate. As you suggested, Judge Berzon, it's entirely possible and indeed likely that Mr. Chappelle tried for a period of time to reconstruct the appeal as best he could, sought an extension for that purpose, and when he was unable to do so, did not pay the filing fee and ceased to prosecute the case further. The other point I would like to make quickly is this notion that he litigated again and again and again is of no moment under Rhodes v. Robinson. One of the points of that case, the whole point of the Catch-22 reference, is that subsequent litigation activity cannot be held against you in one of these retaliation cases, and the focus is not on the particular plaintiff, whether he or she was chilled in the exercise of his or her First Amendment rights. Rather the focus is on whether a person of ordinary firmness would be chilled. And I think the point of footnote 11 in Rhodes v. Robinson is to say that if the harm is more than minimal, you can take it for granted or you can assume that a person of ordinary firmness would be chilled, and it should not redound to the tortfeasor's benefit if he or she happens to pick on someone of more than ordinary firmness. Thank you. Very much. Thank you, counsel, for your useful arguments. The case of Chappelle v. McCarter is submitted. The next case, Comparin v. Gonzales, has been submitted on debris, so we will proceed to Ray v. Gonzales.
judges: B .Fletcher, Gibson , Berzon